**Beverly J. HEPNER,**
**Petitioner-Appellant,**

v.

**Paul W. HEPNER, Jr.,**
**Respondent-Appellee.**

**No. 3–983A299.**

Court of Appeals of Indiana,
Third District.

Oct. 25, 1984.

David M. Hamacher, Hamacher & Hamacher, Crown Point, John F. Martoccio, Martoccio & Martoccio, Chicago, Ill., pro hac vice, for petitioner-appellant.

STATON, Presiding Judge.

This appeal presents a question of jurisdiction between an Indiana court and an Illinois court under Indiana's Uniform Child Custody Jurisdiction Law (the UCCJL), Ind.Code 31–1–11.6–1 et seq. (Burns 1980 Repl.). Because jurisdiction was not properly invoked by the Indiana court, we will not address the other issues raised in this appeal.

Beverly and Paul Hepner were divorced in the Porter County, Indiana Superior Court. The court awarded Beverly custody of their child, Kelly, and Paul was given visitation rights.

Over the next several years, petitions and cross-petitions were filed alleging various contemptuous acts regarding visitation and support. Later, on March 9, 1983, the Indiana court denied a petition filed by Beverly which requested the termination of Paul's visitation rights on the grounds that he neglected Kelly during visits. The court denied the petition, modified visitation slightly, ordered Paul to pay support owed and to enroll in "S.T.E.P." classes. The Indiana court apparently held both parties in contempt, but its decision about their punishment was taken under advisement.

Beverly and Kelly had been living in Illinois for over six months with the Indiana court's permission. Two weeks after the Indiana court denied Beverly's petition to terminate visitation, she filed an emergency petition in the Cook County, Illinois Circuit Court requesting suspension of Paul's visitation rights pending a hearing. The petition was substantially similar to that which the Indiana court had denied; however, it contained allegations of Paul's neglect on dates subsequent to the Indiana court's decision.

In response, Paul petitioned the Indiana court to order Beverly to show cause why she should not be held in contempt for filing the Illinois petition. He did not allege that Beverly had violated the provisions of the custody and visitation order

but that she was in contempt for "trying to circumvent and ignore" the Indiana court's order by filing in Illinois.

A hearing on Paul's petition took place and the court ruled:

"That the Petitioner [Beverly] is hereby enjoined from proceeding for said action in Illinois currently scheduled for the 4th day of April, 1983, before the Honorable Judge Gentile.

That this Court specifically finds that the Porter Superior Court of Porter County, Indiana has both in personam and in rem jurisdiction over the petitioner and the Respondent.

That the Circuit Court of Cook County, Illinois, is respectfully requested to decline jurisdiction of the Petitioner's action filed before said Court and set for hearing on April 4, 1983. In support of said request to deny jurisdiction, this Court refers to I.C. 31–1–11.6–8 which said statute is identical to Section 8 of the Uniform Child Custody Jurisdiction Act. The Court specifically finds that the Petitioner has engaged in reprehensible conduct by attempting to seek relief before the Cook County Circuit Court when the identical petition has been denied in the Porter Superior Court less than one month prior to the filing of the same.

That this matter is now set for hearing on the Respondent's Petition for Rule to Show Cause on the 22nd day of April, 1983 at 9:30 a.m."

The Indiana court and Beverly's attorney had the following exchange:

"MR. VEGA: Yes, Your Honor. The petitioner is—would put forth the argument that she's not in contempt of this Court. She has—she's complying with the Court Order dated March 9th. There's nothing in the Court Order dated March 9th that indicates she's restrained from filing a litigation in another jurisdiction.

"We're all aware the Court Orders involving custody, visitation and support are not final orders. They're subject to modification when circumstances arise which would warrant modification. Either petitioner or respondent is permitted to file litigation in any Court having subject matter jurisdiction and we'd say now that the Circuit Court of Cook County, Illinois does have subject matter jurisdiction. It's the home state of both the petitioner and the child that she has custody over.

I've been told by my client that she's complying with the Order of the Court and she's not, not in no way has she committed a contemptuous act with respect to the Court's Order.

What we have here, Your Honor, is concurrent subject matter jurisdiction between this Court and the Circuit Court of Cook County, Illinois.

THE COURT: In rem or in personam?

MR. VEGA: Subject matter. In personam is another matter. That might be a problem for some attorney in Illinois, I don't know, but my reading of Indiana Code title 31, article 1–11.6 would indicate that both this Court and Circuit Court of Cook County, Illinois have subject matter jurisdiction.

MR. VEGA: The Order is dated March 9th and the petitioner alleges in her action in Illinois that circumstances have arisen after the visitation of the respondent on March 18th through March 20th. Now she's not here to explain what those are but it was clearly after this Court's Order and perhaps justifies looking into the matter again. And she's allowed to go into any Court that has subject matter jurisdiction.

THE COURT: Well, you keep saying that—

MR. VEGA: Yes.

THE COURT: —and I respectfully disagree. The thrust of the Acts which have been passed in recent years to avoid multiplicity of litigation with parties, forum shopping in these United States.

The Court does now sua sponte enjoin Beverly J. Hepner from proceeding with the instant action in Illinois, cause number previously stated by me, with particular reference to the hearing of Monday

next. The Court has in personam jurisdiction of the subject matter and of the parties. As a matter of fact, she has brought proceedings in this Court as the petitioner seeking relief in this Court on numerous occasions in the recent past.

The Court also would respectfully request that the Circuit Court of Cook County decline jurisdiction in accord with Section 8—31–1–11.6–8 on the basis that the conduct of Beverly Hepner is reprehensible in that she seeks to obtain relief that has been declined her in this Court within the last month.

Mr. Bertig, please prepare an Order. Please cause it to be certified and please cause it—a copy of it to be delivered to Judge Gentile at the Circuit Court in Chicago, Cook County Circuit Court.

MR. BERTIG: Your Honor, would this matter be continued for further hearing?

THE COURT: The issue of contempt is continued until she can be present and explain her activities if she wishes to do so.

"MR. VEGA: I'll cite an Indiana case, *In Re The Marriage of Cline* [(1982) Ind., 433 N.E.2d 51] and says, 'when confronting an interstate custody dispute, the trial Court must engage in a multi-step analysis to determine first, whether it has subject matter jurisdiction, second, to determine whether it should exercise its jurisdiction'.

THE COURT: That's been done in the past.

MR. VEGA: Pardon?

THE COURT: That's been done in the past.

MR. VEGA: Well, Your Honor, up until March 25th there was no interstate custody dispute. All proceedings were held in this Court.

THE COURT: I'm not going to go on with—Mr. Vega, there's nothing else you're going to put on the record. This is argumentative. If you wish to appeal it, you can cite that to the Appellate Court.

MR. BERTIG: Thank you, Your Honor.

THE COURT: Thank you."

The Indiana court set April 22 for a hearing on Paul's petition for rule to show cause. On that date it ruled:

"1. That a warrant is hereby issued for the arrest of the Petitioner, Beverly J. Hepner, for failing to appear, after being duly notified of the same. The Court hereby sets a cash bond in the sum of $5,000.00.

2. That said bench warrant is hereby held in abeyance until the 29th day of April, 1983, in order to provide the Petitioner an opportunity to appear personally with the minor child of the parties, before this Court. In the event the Petitioner fails to appear on or before said date, said warrant shall be activated and turned over to the Porter County Sheriff's Department for execution.

3. That the Respondent shall additionally refer this matter to the Porter County Prosecutor's Office for additional relief in the event the Petitioner fails to appear on or before the 29th day of April, 1983.

4. That the Court again requests the Circuit Court of Cook County, Illinois, to refrain from proceeding further in this matter on the grounds that the Petitioner has engaged in reprehensible conduct and that the Porter Superior Court has both in rem and in personam jurisdiction over the divorce and the parties."

Beverly's attorney moved for a stay of the proceedings under IC 31–1–11.6–6 of the UCCJL on the basis that simultaneous proceedings were pending in Illinois and Indiana. The Indiana court stated:

"We don't have simultaneous proceedings. This Court was first in time—this Court retains jurisdiction, I'll say it again and again and again and this Court does now issue a warrant for the arrest of Mrs. Hepner, Beverly J. Hepner and set bond on that—excuse me—orders the Clerk to issue a bench warrant for her immediate arrest and does now set a cash bond on that bench warrant in the sum of Five Thousand Dollars.

"Mrs. Hepner is going to be given one further opportunity by this Court to appear with that child before this Court. The warrant will stay issued and in the hands of the Sheriff of Porter County.

THE COURT: I'll say it again. The purpose of the Uniform Child Custody Jurisdiction Act is to avoid the exact actions that Mrs. Hepner is undertaking and I won't have it if I can avoid it. She's not going to run from jurisdiction to jurisdiction seeking to invoke the aid and assistance of various Courts when this Court has and continues to exercise and will exercise jurisdiction given the present fact situation. I really think the time has come when apparently the Court in Cook County chooses, if it was aware, not to accede to the provisions of that Act which Illinois has signed. And I ask the Court or the Court Reporter to provide a certified copy so I may refer this to the Judicial Disciplinary Commission of the State of Illinois concerning whomever's signature appears on that Order. This nonsense is going to stop if I can stop it. That child deserves better."

Beverly again failed to appear. An arrest warrant was issued.

The section of the UCCJL which outlines its jurisdictional bases provides in part:

"31–1–11.6–3. Jurisdiction.—(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six [6] months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2) It is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

While Illinois was Kelly's home state when the proceedings were filed and clearly had a jurisdictional basis under the UCCJL, Indiana also could arguably have had jurisdiction under subsection (2). However, we agree with Beverly that the Indiana court failed to properly invoke its jurisdiction.

The Indiana court proceeded in reliance on the concept of "continuing jurisdiction." However, under the UCCJL, that concept has been given a "new twist." *See Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23, 28.

■ Under the UCCJL, when a court becomes aware that a custody dispute has an interstate dimension, as the Indiana court did when Paul filed his petition to show cause, that court has an affirmative duty to question its jurisdiction. *Clark, supra*, 404 N.E.2d at 27; *Campbell v. Campbell* (1979), 180 Ind.App. 351, 388 N.E.2d 607, 608.

■ If another custody proceeding is pending in another state, as was the case here, the court must follow section 6 of the act which provides:

"31–1–11.6–6. Simultaneous proceedings in other states.—(a) A court of this state *shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state* exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

(b) Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under section 9 [31–1–11.6–9] of this chapter and shall consult the child custody registry estab-

lished under section 16 [31–1–11.6–16] of this chapter concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.

(c) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 19 through 22' [31–1–11.6–19—31–11.6–22] of this chapter. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum. [IC 31–1–11.6–6, as added by Acts 1977, P.L. 305, § 1.]" (Emphasis added.)

The Indiana court clearly ignored this provision.

■ And, even if the Indiana court had properly determined it did have jurisdiction under the UCCJL, and even if it properly ignored the "simultaneous proceedings" section, it was its duty under the act to determine whether or not to exercise its jurisdiction. Section seven provides in part:

"31–1–11.6–7. Inconvenient forum.— (a) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case

and that a court of another state is a more appropriate forum.

(b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

"(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate; and

(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 1 [31–1–11.6–1] of this chapter.

(d) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

(e) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum."

The "Inconvenient Forum" section is designed so that only one state's jurisdiction will control in a custody dispute. *Campbell, supra,* 388 N.E.2d at 610.

The court clearly failed to follow the act. It was correct in its statements concerning the purpose of the UCCJL. However, we would refer the court to other policies behind the act which are to:

"(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

"(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child."

IC 31–1–11.6–1 (1980 Burns Repl.).

█ The Indiana court lacked power to act because of its failure to seriously address the issue of its jurisdiction under the UCCJL. *Campbell, supra,* 388 N.E.2d at 607. Therefore, its subsequent orders, including the contempt citation and the warrant for Beverly's arrest, are vacated.

Reversed.

NEAL, P.J. (by designation), concurs.

GARRARD, J., concurs in result.